## D. A. CHAMPLIN ET AL. *v.* J. N. McLEOD ET ALS.

1. VENDOR AND VENDEE. *Purchase-money secured by invalid deed of trust. Implied lien not lost. Case in judgment.*

    M. and wife, owning a tract of land jointly, sold it to W. D. C. and D. A. C., giving a bond for title, and taking notes for the purchase-money. M. put the notes in the capital stock of the firm of M. & J., of which he was a member. Afterwards, by agreement, the bond was surrendered to M. and wife, who made a deed of the land to D. A. C. and A. C., wife of W. D. C., and took the note of the grantees and others for the purchase-money, payable to the firm of M. & J., and secured by deed of trust from all the makers of the note, to P., as trustee. P., as trustee, sold and conveyed the land to H., who conveyed to the firm of J. & P. No money was paid on either conveyance. It was understood that the note should be credited with the amount of the bid, and that the two firms would settle the matter by agreement, but no settlement was made. It was discovered that the acknowledgment of A. C., a married woman, was invalid. M. & J. then transferred the note to M. and wife, who filed their bill to subject the land to the payment of the note. *Held,* that the non-execution of the deed of trust by A. C. had the effect to remit the complainants to their original position, as vendors of the land by title-bond, and as such entitled to make the title conveyed to D. A. C. and A. C. subservient to their claim for purchase-money.

2. CHANCERY. *Practice. Parties. Bill defective.*

    Where a bill, filed to subject a certain tract of land to the payment of purchase-money, shows that the legal title to an undivided half interest in the land is outstanding in persons not made parties to the suit, the court below should sustain a demurrer to the bill for want of proper parties.

APPEAL from the Chancery Court of Panola County.

Hon. J. C. GRAY, Chancellor.

In the year 1871, J. N. McLeod and his wife sold to W. D. and D. A. Champlin, the wife's land for $3,600, of which

$1,000 was paid in cash, and for the balance W. D. and D. A. Champlin gave two notes, and McLeod and wife gave a bond for title. In the year 1873, J. N. McLeod formed a mercantile partnership with one M. B. Jones, under the firm name of McLeod & Jones. McLeod put in the notes given by the Champlins as his contribution to the partnership capital. On the fourteenth day of February, 1874, by agreement of all parties interested, J. N. McLeod and wife made a deed conveying the land to D. A. Champlin and Annie Champlin, wife of W. D. Champlin. At the same time a note was given for $2,065, the amount of unpaid purchase-money, signed by D. A. Champlin, Lucinda Champlin his wife, W. D. Champlin, and Annie Champlin his wife. The note was payable Dec. 1, 1874, to the firm of McLeod & Jones. A deed of trust on the land was given by all the makers of the note to W. W. Perkins, as trustee, to secure the payment of said note to McLeod & Jones.

On the tenth day of July, 1875, Perkins, the trustee, sold the land under the deed of trust to James F. Harris, for $2,000 ; but none of the money was paid. The trustee, however, gave to Harris a deed to the land. A few days afterward, Harris, by deed, conveyed the land to Jones & Perkins, a firm composed of M. B. Jones and W. W. Perkins. Jones & Perkins paid nothing on their purchase, as it was intended that the note should be credited with the amount of the bid, and that the two firms should settle the matter by mutual agreement, but no settlement was ever made. Some time subsequently it was discovered that the acknowledgment of Annie Champlin to the trust deed was invalid. Jones then became unwilling that McLeod should any longer have credit for said note as capital in their firm, and McLeod & Jones, for value, transferred the note to J. N. McLeod and wife. On the eighth day of January, 1876, J. N. McLeod and wife filed their bill in the Chancery Court of Panola County, praying that the deeds from Perkins to Harris and from Harris to Jones & Perkins be cancelled, that an account be taken to ascertain the amount due on said note, and decree rendered therefor, and that said land be sold to satisfy the same. W. W. Perkins, James F. Harris and M. B. Jones were not made parties to

the suit. The defendants demurred to the bill for want of equity, and because Perkins and Jones were not made parties. The demurrer was overruled, and the defendants appealed to this court.

*Frank Johnston*, for the appellants.

1. On the fourteenth day of February, 1874, the complainants entered into a new and different contract in relation to this land, abandoned the previous security of a vendor's lien, and took new and different security for the purchase-money, — a deed in trust. The principle is that when an express lien, *ex contractu*, is taken, the idea of an implied lien is excluded. *Phillips* v. *Saunderson*, 1 S. & M. Ch. 465; *Bond* v. *Kent*, 2 Vern. 281; *Little* v. *Brown*, 2 Leigh (Va.), 353; *Fish* v. *Harland*, 1 Paige, 30; *Brown* v. *Gilman*, 4 Wheat. 290. It is clear the trust deed superseded the implied lien.

2. Did McLeod & Jones have a vendor's lien on the land for the security of the notes? The essence of the lien is an implied security for the vendor. It springs, as an implication of law, out of the relations the parties, vendor and vendee, bear to each other. And the implied equities are mutual and reciprocal. As has been said by this court, the vendor's lien is founded upon an implied trust between the vendor and vendee, and exists between them alone, and is incapable of existence except where this relation exists. *Skaggs* v. *Nelson*, 25 Miss. 88; *Pitts* v. *Parker*, 44 Miss. 247. Where the debt for the unpaid purchase-money is not due and payable to the vendor, and the obligation of the vendee, though given in consideration of the sale made by the vendor, is to a third party, there is no lien, unless one is expressly reserved. *Patterson* v. *Edwards*, 29 Miss. 67, 71.

3. McLeod & Jones had no vendor's lien on the land for the security of the note given to them. The law never implied a lien as attaching to the note at its inception. There was no vendor's lien springing out of the contract of sale. How, then, could McLeod & Jones assign a lien in equity that they did not have? And how could the assignment of the note, or the fact of a repurchase of the note, create a lien? The complainants have no vendor's lien which can be restored to them by a cancellation of the deed in trust.

4. The bill did not join all the necessary parties. James F. Harris, the purchaser at the sale, to whom the title was conveyed by the trustee, and W. W. Perkins and M. B. Jones, to whom he subsequently conveyed the title, are not made parties. If the deed of trust be void as to Mrs. Champlin, it is not void as to the other grantors, and consequently the legal title to one-half the land is not before the court. Jones, as assignor of the note to the complainants was a necessary party. *Archer* v. *Jones*, 4 Cushman, 583. The interest, whether legal or equitable, should be before the court. Story Eq. Pl. §§ 76, 137.

*T. W. White* and *R. H. Taylor*, for the appellees.

1. In a case like this, it makes no difference that a married woman•is a party to the transaction, and holds the legal title to the land. *Orr* v. *Doyle*, 51 Miss. 229.

2. It is claimed by us that the defective execution of the trust deed cannot prejudice our rights, and that we have a right in equity to have the defective execution made a good execution. *Sparkes* v. *Pittman*, 51 Miss. 511.

We further claim, that, since McLeod and wife, when the first purchase was made, had a claim or a lien on the land for the unpaid purchase-money, that this claim was not taken away by the subsequent agreement to make a deed and receive a trust deed back, but that it continued, and was intended to be continued, by such trust deed, and that a failure to make the trust deed effectual on the part of the Champlins (mother and son) was a violation of the contract under which the deed was made; that consequently they cannot hold on to the deed and refuse to pay the money and carry out the contract or surrender the land. *Sparkes* v. *Pittman*, 51 Miss. 511; *Nicholson* v. *Heiderhoff*, 50 Miss. 56.

The married woman had a right to execute a trust deed for the purchase-money of land bought by her. *Gordon* v. *Manning*, 44 Miss. 756. A married woman may purchase land on a credit, and if she does, she holds it subject to all the equities which attach to vendees, as if she were a *feme sole*. *Foxworth* v. *Bullock*, 44 Miss. 457; *Johnson* v. *Jones*, 51 Miss. 860; *Staton* v. *New*, 49 Miss. 307.

The rule is invariable and founded on the highest equity, that

where land is sold and a lien reserved, either by giving bond for title and retaining the equitable title, or by making deed and taking trust deed to reserve purchase-money, or by reserving lien in the deed, the lien can only be got rid of by paying the debt, and the lien will follow the debt under any and all changes of form. *Russell* v. *Watt*, 41 Miss. 602 ; *Anderson* v. *Spencer*, 51 Miss. 872 ; *Dollahite* v. *Orne*, 2 S. & M. 590 ; *Tanner* v. *Hicks*, 4 S. & M. 300 ; *Pitts* v. *Parker*, 44 Miss. 251, 252.

The transfer of the note by McLeod and making the deed can make no difference, for three reasons : —

1. It was assigned without the consent of the wife.

2. When assigned no deed had been made, and the lien went with it, and it never was intended, when the deed was made, to depend on the technical " vendor's lien," but on the trust deed, which was to be made, and was made as a part of the transaction, and only defectively executed.

3. The reassignment of the note to McLeod and wife puts them in the same condition as regards the debt as if they had never parted with the note. 44 Miss. 251 ; 42 Miss. 401.

CAMPBELL, J., delivered the opinion of the court.

The appellees, who are husband and wife, jointly owned a tract of land in Panola County, and bargained it to W. D. and D. A. Champlin, giving them a bond for title, and taking their notes for the purchase-money. These notes were put by the husband, McLeod, into a mercantile concern of which he was a partner, as his contribution to the capital stock, and subsequently, by agreement of all parties interested, the bond for title was surrendered to the appellees, who made a deed conveying the land to D. A. Champlin, and Annie Champlin, wife of said W. D. Champlin ; and a note was given for the purchase-money, payable to McLeod & Jones, the mercantile partnership above mentioned ; and a deed of trust was given by all of said Champlins on said land to secure said note for the purchase-money remaining due. Perkins was made trustee in said deed of trust, with power to sell, and in due time did sell the land under the deed of trust, when it was bid off

by one Harris, as the friend of the firm of Jones & Perkins, and was conveyed without payment of any money by Perkins, trustee, to Harris, and by Harris in like manner, at the request of McLeod & Jones, conveyed to Jones & Perkins, who paid nothing, but were to satisfy the bid of Harris by a credit on the note of the Champlins, according to some understanding between the firms of Jones & Perkins and McLeod & Jones. No settlement was made, however, because it was soon discovered that there was a fatal defect in the deed of trust, by reason of a want of proper acknowledgment of its execution by Annie Champlin, a married woman, as aforesaid. When this discovery was made, the partner of McLeod, of the firm McLeod & Jones, was no longer willing for McLeod to have credit for the note as his contribution to the capital of said partnership; and the note of the Champlins was transferred by its holders to McLeod and wife, who exhibited their bill to subject the land in the hands of the Champlins to the payment of the note. Demurrer to the bill was overruled and the decree appealed from.

The theory of the complainants' equity is that they had retained the title of the land as security for the payment of the purchase-money, and the notes were secured by the land; and when, by agreement of all parties in interest, the bond was exchanged for a deed of conveyance, and a new note was taken for the purchase-money, payable to McLeod & Jones, a part of the transaction was that this note was to be secured by the land, and to that end a valid security was to be made, whereby the land would stand pledged for the payment of the note; and as the scheme failed of execution, according to the purpose of all the contracting parties, and the title of half of the land is in Annie Champlin, by reason of the defective acknowledgment of the deed of trust, and the complainants have acquired the note which represents the unpaid purchase-money of the land, a court of equity, as against the Champlins or volunteers under them, should fasten a charge upon the land, and not permit it to be held, *without being paid for.* The theory is correct; and it is not perceived that to effectuate the purpose of the contracting parties, when the deed of trust was given, will violate any principle of sound law or morals.

This case differs widely in principle from *Patterson* v. *Edwards*, 29 Miss. 67. It would be strange if the Champlins could hold the land, without paying for it. The failure of so essential a part of the transaction attempted to be effected as the non-execution by Annie Champlin of the deed of trust, had the effect to remit the complainants to their original position as vendors of the land by title-bond, and as such entitled to make the title they had been induced to convey to D. A. Champlin and Annie Champlin, subservient to their claim for purchase-money, which, though intended to be paid by an obligation to third persons secured by the land, was not so paid, because, though an obligation was given, it was not secured by a valid deed of trust, as intended.

The bill shows that the legal title to an undivided half interest in the land is, by virtue of the deed of trust and subsequent conveyances, outstanding in persons who are not made parties to the suit. For this defect the demurrer ought to have been sustained.

The decree overruling the demurrer will be reversed, and the demurrer sustained, and the cause remanded with leave to the complainants below to amend their bill as they may be advised.

CHALMERS, J., having been of counsel, took no part in the decision.